IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

No. 4:12-CV-89-D

| | |
|---|---|
| BOBBY HARRELL, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>)<br>CAROLYN W. COLVIN, )<br>Acting Commissioner of Social )<br>Security, )<br>Defendant. )<br>_____ ) | **MEMORANDUM &**<br>**RECOMMENDATION** |

This matter is before the Court upon the parties' Motions for Judgment on the Pleadings. (DE's-21 & 24). Plaintiff has filed a response (DE-26), and the matter is now ripe for adjudication. Pursuant to 28 U.S.C. § 636(b)(1), this matter has been referred to the undersigned for the entry of a Memorandum and Recommendation. (DE-27). For the following reasons, it is RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings (DE-21) be GRANTED, and that Defendant's Motion for Judgment on the Pleadings (DE-24) be DENIED. Specifically, it is RECOMMENDED that Defendant's final decision be vacated and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings.

**Statement of the Case**

Plaintiff applied for supplemental security income on January 26, 2010 alleging disability beginning October 31, 2008. (Tr. 13). His claim was denied initially and upon reconsideration. *Id*. A hearing was held before an Administrative Law Judge ("ALJ") who determined that Plaintiff was not disabled in a decision dated September 13, 2011. *Id*. at 13-23. The Social Security Administration's Office of Disability Adjudication and Review denied Plaintiff's

request for review on March 9, 2012. *Id*. at 1. Therefore, the ALJ's September 13, 2011 determination is Defendant's final decision. Plaintiff filed the instant action on May 25, 2012. (DE-5).

**Standard of Review**

This Court is authorized to review Defendant's denial of benefits under 42 U.S.C. § 405(g), which provides in pertinent part:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive...

42 U.S.C. § 405(g).

"Under the Social Security Act, [the Court] must uphold the factual findings of the Secretary if they are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). "Substantial evidence is . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). "In reviewing for substantial evidence, . . . [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute . . . [its] judgment for that of the Secretary." Craig, 76 F.3d at 589. Thus, this Court's review is limited to determining whether Defendant's finding that Plaintiff was not disabled is "supported by substantial evidence and whether the correct law was applied." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

However, before a court can determine whether a decision is supported by substantial

evidence, it must ascertain whether Defendant has considered all relevant evidence and sufficiently explained the weight given to probative evidence. *See*, Sterling Smokeless Coal Co. v. Akers, 131 F.3d 438, 439-440 (4th Cir. 1997). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." DeLoatche v. Heckler, 715 F.2d 148, 150 (4th Cir. 1983). Without an analysis of all evidence and a sufficient explanation of the weight given to obviously probative exhibits, it is not possible to determine if the ALJ's decision is supported by substantial evidence. Arnold v. Secretary of Health, Ed. and Welfare, 567 F.2d 258, 259 (4th Cir. 1977). Remand is appropriate where an ALJ fails to discuss relevant evidence that weighs against his decision. Ivey v. Barnhart, 393 F. Supp. 2d 387, 390 (E.D.N.C. 2005)(*Citing*, Murphy v. Bowen, 810 F.2d 433, 438 (4th Cir. 1987)).

**Analysis**

The Social Security Administration has promulgated the following regulations which establish a sequential evaluation process that must be followed to determine whether a claimant is entitled to disability benefits:

> The five step analysis begins with the question of whether the claimant engaged in substantial gainful employment. 20 C.F.R. ' 404.1520(b). If not, the analysis continues to determine whether, based upon the medical evidence, the claimant has a severe impairment. 20 C.F.R. ' 404.1520(c). If the claimed impairment is sufficiently severe, the third step considers whether the claimant has an impairment that equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations. 20 C.F.R. ' 404.1520(d); 20 C.F.R. Part 404, subpart P, App.I. If so the claimant is disabled. If not, the next inquiry considers if the impairment prevents the claimant from returning to past work. 20 C.F.R. ' 404.1520(e); 20 C.F.R. ' 404.1545(a). If the answer is in the affirmative, the final consideration looks to whether the impairment precludes the claimant from performing other work. 20 C.F.R. ' 404.1520(f).
>
> Mastro v. Apfel, 270 F.3d 171, 177 (4th Cir. 2001).

In the instant action, the ALJ employed the sequential evaluation. First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 26, 2010. (Tr. 15). At step two, the ALJ found that Plaintiff had the following severe impairments: 1) degenerative disc disease; 2) arthritis; 3) substance addiction disorder; and 4) borderline intellectual functioning. *Id*. However, the ALJ determined that these impairments were not severe enough to meet or medically equal one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1. *Id.* at 15-16. Next, the ALJ determined that Plaintiff had the residual functional capacity to:

> perform medium work as defined in 20 CFR 416.967(c) except he is limited to simple and repetitive tasks with a Specific Vocational Profile level of no greater than two. Further, he must work in a low stress environment, with no production pace or work deadlines so that he may work at his own pace, and he must have a predictable schedule. Lastly, he should have only occasional interaction with supervisors, co-workers and the public.
>
> *Id*. at 17.

The ALJ then determined that Plaintiff was capable of performing his past relevant work. *Id*. at 22-23. Based on these findings, the ALJ determined that Plaintiff had not been under a disability from January 26, 2010 through September 13, 2011. *Id.* at 23.

Plaintiff argues that the ALJ erred in determining that Plaintiff did not meet Listing 12.05C. Listing 12.05 states in relevant part:

> 12.05 Mental Retardation and Autism: Mental retardation refers to a significantly subaverage general intellectual functioning with deficits in adaptive behavior initially manifested during the developmental period (before age 22) . . . The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied . . .
>
> . . . C. A valid verbal, performance, or full scale IQ of 60 to 69 inclusive and a physical or other mental impairment imposing additional and

4

significant work-related limitations of function . . .

20 C.F.R. pt. 404, Subpart P, App. 1, § 12.05.

The Fourth Circuit has explained this Listing in the following manner:

> Listing 12.05 requires a showing of "deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22" ("Prong 1"). Listing 12.05 also requires the satisfaction of one of four additional requirements identified as Requirements A–D . . . Requirement C . . . requires "[a] valid verbal, performance, or full scale IQ of 60 through 70" ("Prong 2"), as well as "a physical or other mental impairment imposing an additional and significant work-related limitation of function" ("Prong 3").

Hancock v. Astrue, 667 F.3d 470, 473 (4th Cir. 2012).

Adaptive functioning deficits "can include limitations in areas such as communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety." Jackson v. Astrue, 2012 WL 580239, * 3 (4th Cir. 2012) (*Citing* Atkins v. Virginia, 536 U.S. 304, 309 n. 3 (2002)).

Notably, the ALJ does not specifically refer to Listing 12.05 in his decision. Because the record arguably supports a finding that Plaintiff meets Listing 12.05, and the ALJ failed to adequately explain his findings with regard to that Listing, remand is required. *See*, McNeill v. Astrue, 2013 WL 865621, * 4 (E.D.N.C 2013)(Remanding because "the ALJ failed to adequately explain his ruling on Listing 12.05C"), *Report and Recommendation Adopted by*, 2013 WL 866070. *See also*, Strong v. Astrue, 2011 WL 2938084, * 9 (D.S.C. 2011)("The ALJ's failure to expressly consider and discuss his findings regarding whether Plaintiff satisfied Listing 12.05 would be sufficient reason to remand to the ALJ to properly consider the issue . . . [t]he decision fails to identify the listing, to explain the standard to be applied, and to compare Plaintiff's symptoms to the requirements of Listing 12.05").

5

For example, Plaintiff underwent a psychological evaluation on July 8, 2008. (Tr. 240). The evaluation was administered by Michael Bramble, M.A. Plaintiff was divorced, homeless, and living in his car. *Id*. It was noted that he discontinued school in the seventh grade. *Id*. Based on this evaluation, it was determined that Plaintiff had a: 1) Verbal Scale IQ of 66; 2) Performance Scale IQ of 68; and 3) Full Scale IQ of 64. *Id*. at 241. He was performing at the second grade level, and was described as "functionally illiterate." *Id*. at 242. Specifically, Plaintiff was deemed unable to complete job applications and/or follow written instructions. *Id*. In addition, it was determined that Plaintiff would have problems with independent living skills. *Id*. Likewise, Plaintiff was deemed limited in his ability to make use of vocational training, and would therefore require supervision in the workplace. *Id*. Because of his intellectual limitations, it was determined that Plaintiff would have significant problems with judgment, decision making, and independent functioning. *Id*. Plaintiff's vocational options were described as "significantly limited", and it was observed that Plaintiff would struggle with absenteeism and work performance. *Id*. at 243. During the evaluation, "there was a strong odor of alcohol about [Plaintiff's] person." *Id*. at 241. Nonetheless, the examiner still opined that Plaintiff's abilities were accurately measured. *Id*. Ultimately, the examiner opined that Plaintiff was "in the Mild Range of Mental Retardation." *Id*. at 243.

Dr. Gerald Strag examined Plaintiff on April 12, 2010. *Id*. at 265. At this time, Plaintiff was still "living out of his car." *Id*. at 266. Plaintiff's range of vocabulary was limited and his grammar was marked by repeated mistakes. *Id*. He was unable to complete simple computations. *Id*. at 267. Plaintiff was diagnosed with borderline intellectual functioning. *Id*. at 266-267.

On April 20, 2010, Dr. Gregory Solovieff examined Plaintiff and concluded that Plaintiff

6

had a "[h]istory of suggested learning disability/mental retardation." *Id*. at 272.

Ms. Virginia Jeffers, a licensed social worker, examined Plaintiff on several occasions. She stated on March 22, 2010 that Plaintiff could not read or write. *Id*. at 289, 300. On April 20, 2010, Ms. Jeffers indicated that Plaintiff "has slept in his car for a year." *Id*. at 286. She also indicated that Plaintiff "had problems with a learning disability in school and quit early." *Id*.

Plaintiff was examined by Dr. Gary Whitlock on several occasions. Plaintiff consistently demonstrated poor insight and judgment. *Id*. at 281, 283, 360, 363, 369, 372, 375, 378, 381, 383. Likewise, Plaintiff's Global Assessment of Functioning was consistently rated as 45-50, indicating serious impairment in social, occupational or school functioning. *Id*. at 281, 283, 287, 360, 363, 366, 369, 372, 375, 378, 381, 383. Dr. Whitlock assessed Plaintiff's ability to perform work-related activities on June 18, 2010. *Id*. at 275. He opined that Plaintiff would either perform poorly or be unable to perform most work related activities due to his mental impairments. *Id*. at 275-278.

On June 30, 2011, Plaintiff's ability to perform work related activities was assessed by Ms. Joan Rodgers, a Family Nurse Practitioner. *Id*. at 348-351. She noted that Plaintiff could not read or write. *Id*. at 349. According to Ms. Rodgers, Plaintiff would generally have a fair ability to make occupational adjustments, such as relating to co-workers or dealing with the public. *Id*. Plaintiff would also have a fair ability to carry out simple instructions. *Id*. However, she stated that Plaintiff would have poor or no ability to carry out complex or detailed instructions. *Id*. In support of this finding, Ms. Rodgers indicated that Plaintiff had limited education, poor memory, and poor decision making. *Id*. Ms. Rodgers also opined that Plaintiff demonstrated poor insight and judgment, and would therefore be unpredictable in social situations. *Id*. at 350. Finally, she stated that Plaintiff would not be able to manage benefits in

7

his own best interest. *Id*.

With regard to this record, the ALJ made the following findings:

> . . . [T]he claimant's mental examinations do not demonstrate findings one would generally associate with a[ ] person who is totally disabled . . .
>
> Regarding his borderline intellectual functioning, the claimant has a low education level which supports a learning disorder. He also has low intelligence quotient tests, which are given some weight in making this assessment (Ex. 1F). He performed poorly on math calculations and other problems administered during mental status examination and demonstrated poor fund of knowledge and concrete thinking (Ex. 5F). His low education level and borderline intellectual functioning support that he needs to be limited to simple and repetitive work with an SVP code of no higher than 2. Low stress, non-production rate work and a predictable schedule will also help accommodate this impairment.
>
> However, his adaptive level of functioning supports that he does not need further restrictions. At the outset, the undersigned notes the claimant's low intellectual quotient (IQ) testing scores of 66, 68 and 64 in verbal, performance and full-scale scores, respectively (Ex. 1F). However, these scores are not given significant weight because they are not deemed valid in light of the claimant's alcohol use prior to the examination, as evidenced by the smell of alcohol emanating from the claimant (Ex. 1F pg. 2). As intelligence tests are only part of the overall assessment, the narrative report is an important part of the determination. In this instance, the examiner, Michael Bramble, M.A., found the claimant was able to understand and follow instructions for testing and likely complete basic activities of daily living (Ex. 1F pgs. 2-3). These findings are indicative of an adaptive level of functioning more closely in line with borderline intellectual functioning than mild mental retardation . . .
>
> . . . [S]ome weight is given to Michael Bramble, M.A. (Ex. 1F). He opined the claimant should be limited to simple and repetitive tasks, but will require supervision. He also believed the claimant would have significant problems with judgment, decision-making and independent functioning. The undersigned accepts the limitations of Mr. Bramble, but not to the extent alleged. The claimant has been limited to simple and repetitive tasks, and given a low stress, unskilled residual functional capacity with a predictable routine. These limitations adequately accommodate the claimant's education level, learning disorder and difficulties with judgment and decision-making. However, Mr. Bramble failed to identify if the claimant would have difficulties in this areas in simple, detailed and complex work. Given the claimant's work history and adaptive level of functioning, the undersigned finds he is capable of work

8

within the functional parameters set out in this residual functional capacity. To the extent Mr. Bramble's opinion attempts to paint the claimant as incapable of such work, his opinion is found inconsistent with the claimant's work history and cognitive abilities demonstrated in the record. Moreover, he is a licensed psychological associate and his opinion is given less weight . . .

. . .[T]he undersigned gives little weight to the nurse practitioner Joan Rogers, who specializes in Family Health (Ex. 13F) . . . Her opinion is given little weight because her limitation is too extreme given the medical and lay evidence. The claimant demonstrated significant improvements in social functioning with medication including making friends, developing healthier familial relationships and attending church. He related well to the medical providers and was always cooperative. Likewise, he related well to the undersigned and his representative. There is no evidence that the claimant is completely incapable of reacting predictably in social settings given the longitudinal evidence to the contrary. Although deficits were noted in the areas identified by Ms. Rogers, they are adequately accommodated for in this residual functional capacity. Her opinion is also more limiting than the opinions of the examining and reviewing medical doctors, and those opinions are given more weight for the reasons noted above.

Finally, the undersigned gives little weight to Gary T. Whitlock, M.D., the treating provider at Port Human Services (Ex. 7F). Dr. Whitlock opined extreme limitations noting the claimant had fair or no ability to make any occupational, performance or social adjustments. However, he was asked to "describe limitations and include the medical/clinical findings that support this assessment" on three separate occasions on the form he completed, and on each of the three occasions he failed to provide any explanation for his severe assessment. His opinion is not supported by any of the three opinions described above, and even though he provided the most limiting assessment, he also provided the least explanation. His opinion is undermined by the findings of the consultative examiner Dr. Gerald Strag, his own treatment records and the claimant's own report of improved symptoms. In short, Dr. Whitlock failed to provide the necessary explanation on his mental functional assessment form because those findings simply are not available given the evidence.

*Id*. at 18-22.

As noted above, the ALJ did not specifically mention Listing 12.05 in his analysis despite the record containing sufficient evidence to merit an analysis of that Listing. With regard to prong one, Plaintiff is consistently described as functionally illiterate. <u>Strong</u>, 2011 WL 2938084, * 11

9

("Functional illiteracy in and of itself is a deficit in adaptive functioning"). With regard to prong two, Plaintiff has IQ scores within the required range. Finally, prong three is satisfied because the ALJ determined that Plaintiff also has the severe impairments of degenerative disc disease, arthritis, and substance addiction disorder. *See*, Watson v. Astrue, 2013 WL 136425, * 8 (D. Md. 2013)("the ALJ's conclusion that Plaintiff has other severe impairments" satisfies Listing 12.05).

To the extent the ALJ does explicitly discuss relevant factors, his findings are not supported by substantial evidence. Specifically, the ALJ stated that Plaintiff's "adaptive level of functioning supports that he does not need further restrictions." *Id*. at 20. This finding is vague, and does not precisely address the salient issue (*i.e.*-whether Plaintiff had deficits in adaptive functioning initially manifested during the developmental period).

Moreover, the ALJ reached this conclusion by rejecting Plaintiff's IQ scores. *Id*. "[A]n ALJ has the discretion to assess the validity of an IQ test result and is not required to accept it even if it is the only such result in the record." Hancock, 667 F.3d at 474. However, an ALJ's assessment of an IQ score must be supported by substantial evidence. Watson, 2013 WL 136425, * 3-4. Here, the ALJ speculates that Plaintiff's IQ scores are invalid because of Plaintiff's alcohol use prior to the examination. (Tr. 20). However, this speculation contradicts the record, as the examiner clearly states he found the results to be "accurate", the "strong odor of alcohol" notwithstanding. *Id*. at 241. *See also,* (DE-26-1). "The ALJ cannot rely on speculative inferences drawn from the record to reject an IQ score which has not been called into question by any psychologist or other expert, and which is not inconsistent with Plaintiff's level of adaptive functioning." Watson, 2013 WL 136425, * 5 (quotation omitted). Although the ALJ states that Plaintiff's IQ scores are not consistent with his level of adaptive functioning, those

statements are cursory, vague, and not supported by substantial evidence. For example, the ALJ's discussion of Plaintiff's adaptive functioning contains no mention of Plaintiff's illiteracy. Finally, the ALJ also refers to Plaintiff's employment history to support his findings. "However, the fact an individual is able to work . . . is not inconsistent with mild mental retardation." Radford v. Astrue, 2009 WL 1675958, * 6 (E.D.N.C. 2009).

In short, the undersigned recommends that this matter be remanded. On remand, an ALJ should specifically discuss Listing 12.05 and the validity of Plaintiff's IQ scores.

**Conclusion**

For the reasons discussed above, it is RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings (DE-21) be GRANTED, and that Defendant's Motion for Judgment on the Pleadings (DE-24) be DENIED. Specifically, it is RECOMMENDED that Defendant's final decision be vacated and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with the foregoing directives.

SO RECOMMENDED in Chambers at Raleigh, North Carolina on Thursday, May 30, 2013.

_____
WILLIAM A. WEBB
UNITED STATES MAGISTRATE JUDGE

11

Case 4:12-cv-00089-D   Document 28   Filed 05/31/13   Page 11 of 11